**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:26-cv-25518-ALTONAGA

| | |
|---|---|
| ROBERT RAMKISSOON, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LENNAR CORPORATION and LENNAR MORTGAGE, LLC,<br><br>Defendants. | CLASS ACTION |
| LAUREN STEWART, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>LENNAR CORPORATION,<br><br>Defendant. | CLASS ACTION<br><br>Case No. 1:26-cv-25529-RUIZ |
| LISA DIMEGLIO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>LENNAR CORPORATION and LENNAR MORTGAGE, LLC,<br><br>Defendants. | CLASS ACTION<br><br>Case No. 1:26-cv-25575-BECERRA |

CHAD SHARRARD, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

LENNAR CORPORATION and LENNAR MORTGAGE, LLC,

Defendants.

CLASS ACTION

Case No. 1:26-cv-25616-WILLIAMS

ROBERT GORDON, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

LENNAR CORPORATION and LENNAR MORTGAGE, LLC,

Defendants.

CLASS ACTION

Case No. 9:26-cv-81016-ARTAU

**PLAINTIFFS' JOINT MOTION TO CONSOLIDATE RELATED ACTIONS AND MOTION FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL AND INTERIM LIAISON COUNSEL AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Consolidation of the Related Actions Is Warranted ..... 2

1. The Actions Share Many Common Factual and Legal Issues ..... 3

2. Consolidation Will Further the Convenience of the Parties and Witnesses ..... 4

3. Consolidation Will Not Prejudice Any Party ..... 5

B. The Appointment of Proposed Interim Class Counsel Is in the Best Interests of the Putative Class ..... 5

1. Proposed Interim Class Counsel Performed Substantial Work Investigating the Related Actions ..... 7

2. Proposed Interim Class Counsel Have Relevant Experience and Knowledge ..... 8

a. Proposed Plaintiffs' Co-Lead Counsel ..... 8

b. Proposed Plaintiffs' Liaison Counsel ..... 14

3. Other Factors Support the Requested Appointment ..... 16

III. LOCAL RULE 7.1(a)(3) CERTIFICATION ..... 20

IV. CONCLUSION ..... 20

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Adedipe v. U.S. Bank, Nat'l Ass'n*,
2014 WL 835174 (D. Minn. Mar. 4, 2014) ....................7

*Arrington v. Burger King Corp.*,
No. 1:18-cv-24128-RUIZ (S.D. Fla.)....................15

*Bedwell v. Braztech Int'l, L.C.*,
2018 WL 830073 (S.D. Fla. Feb. 9, 2018) ....................3, 5, 6

*Burrow v. Forjas Taurus S.A.*,
2018 WL 809439 (S.D. Fla. Feb. 9, 2018) ....................5

*DiMeglio v. Lennar Corp.*,
No. 1:26-cv-25575 ....................1, 5, 20

*Dryer v. Nat'l Football League*,
No. 0:09-cv-02182-PAM-AJB (D. Minn.) ....................11

*First Choice Fed. Credit Union v. The Wendy's Co.*,
No. 2:16-cv-00506-NBF-MPK (W.D. Pa.)....................10, 16

*G-Force Powersports Inc. v. DHL Express (USA), Inc.*,
No. 0:26-cv-60956-LEIBOWITZ (S.D. Fla. May 15, 2026)....................4

*Gerber v. Twitter, Inc.*,
No. 4:23-cv-00186-KAW (N.D. Cal.) ....................13

*Gordon v. Lennar Corp.*,
No. 9:26-cv-81016 ....................1, 5, 20

*Hendrix v. Raybestos-Manhattan, Inc.*,
776 F.2d 1492 (11th Cir. 1985) ....................2, 3

*In re Aluminum Phosphide Antitrust Litig.*,
1994 WL 481847 (D. Kan. May 17, 1994)....................16

*In re Am. Airlines/JetBlue Antitrust Litig.*,
No.1:22-cv-07374-AMD-TAM ....................13

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
No. 2:19-md-02904-MCA-MAH (D.N.J.)....................14

*In re: Ambry Genetics Data Breach Litig*,
No. 8:20-cv-00791-CJC (C.D. Cal.) ........................................................................................9

*In re: Arby's Rest. Grp., Inc., Data Sec. Litig.*,
No. 1:17-cv-00514-WMR (N.D. Ga.)..........................................................................................10

*In Re: AT&T Inc Customer Data Sec. Breach Litig.*,
No. 3:24-cv-00757-D (N.D. Tex.) ..........................................................................................9

*In re: Bio-Lab Class Actions*,
No. 1:24-cv-04407-SEG (N.D. Ga.) ........................................................................................9

*In re: CenturyLink Sales Practices and Sec. Litig.*,
No. 0:17-md-02795-MJD-JFD (D. Minn.) ..................................................................................11

*In Re: Change Healthcare, Inc. Customer Data Sec. Breach Litig.*,
No. 0:24-md-03108-DWF-DJF (D. Minn.) ...................................................................................10

*In re Enron Corp. Sec. Litig.*,
No. H-01-3624 (S.D. Texas)...................................................................................................16

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
MDL No. 2785, 2:17-md-2785-DDC-TJJ (D. Kan.) .........................................................................15

*In re: Equifax Inc. Customer Data Sec. Breach Litig.*,
No. 1:17-md-2800-TWT (N.D. Ga.)...............................................................................................10

*In re Facebook Biometric Info. Privacy Litig.*,
No. 3:15-cv-03747-JD (N.D. Cal.) ................................................................................................14

*In re: Fortra File Transfer Software Data Sec. Breach Litig.*,
No. 1:24-md-03090-RAR (S.D. Fla.) ...........................................................................................10

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
No. 1:14-md-02583-TWT (N.D. Ga.)............................................................................................10

*In re HVAC Equip. Antitrust Litig.*,
No. 2:26-cv-10949-SKD-APP (E.D. Mich.).......................................................................................15

*In re Independent Living Sys. Data Breach Litig.*,
No. 1:23-cv-21060-WILLIAMS (S.D. Fla.)......................................................................................14

*In re Jan. 2021 Short Squeeze Trading Litig.*,
2023 WL 6534411 (S.D. Fla. Sept. 21, 2023) ...............................................................................4

*In re Lakeview Loan Servicing Data Breach Litig.*,
No. 1:22-cv-20955-GAYLES (S.D. Fla.) ........................................................................................14

*In re Lenovo Adware Litig.*,
2015 WL 10890657 (N.D. Cal. July 27, 2015)....................8

*In re Meta Pixel Healthcare Litig.*,
2022 WL 18399978 (N.D. Cal. Dec. 21, 2022)....................8

*In re: Morgan Stanley Data Sec. Litig.*,
No. 1:20-cv-05914-PAE (S.D.N.Y.)....................9

*In re: MOVEit Customer Data Sec. Breach Litig.*,
No. 1:23-md-03083-ADB (D. Mass.)....................10

*In re Nat'l Football Players' Concussion Injury Litig.*,
No. 2:12-md-02323-AB (E.D. Pa.)....................11

*In Re: Nat'l Hockey League Players' Concussion Injury Litig.*,
No. 0:14-md-02551-SRN-JSM (D. Minn.)....................11

*In re Nat'l Prescription Opiate Litig.*,
No. 1:17-md-02804 (N.D. Ohio)....................16

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
MDL No. 1720 (E.D.N.Y.)....................15

*In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*,
No. 1:24-md--03096-RPK-LGD....................13

*In Re: Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*,
No. 1:24-md-03096-RPK-LG (E.D.N.Y.)....................9

*In re Robinhood Prediction Market Litig.*,
No. 3:26-cv-03415-EMC (N.D. Cal.)....................15

*In re Solara Med. Supplies Data Breach Litig.*,
No. 3:19-cv-02284-H-KSC (S.D. Cal.)....................15

*In re: Sonic Corp. Customer Data Sec. Breach Litig.*,
No. 1:17-md-02807-JSG (N.D. Ohio)....................10, 11

*In re SSA Bonds Antitrust Litig.*,
2016 WL 7439365 (S.D.N.Y. Dec. 22, 2016)....................18

*In re Target Corp. Customer Data Sec. Breach Litig.*,
MDL No. 14-2522....................10, 11

*In re Terazosin Hydrochloride Antitrust Litig.*,
220 F.R.D. 672 (S.D. Fla. 2004)....................7

*In re TikTok Consumer Privacy Litig.*,
No. MDL 2948-A....................13

*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*,
2020 WL 13561433 (S.D. Fla. Aug. 19, 2020)....................6

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
No. 3:15-cv-07658-MAS-LHG (D.N.J.)....................16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
MDL No. 2672 (N.D. Cal.)....................16

*In re Wendy's Co. S'holder Deriv. Action*,
2018 WL 6605394 (S.D. Ohio Dec. 17, 2018), *aff'd*, 44 F.4th 527 (6th Cir. 2022)....................17

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 5:16-md-02752-LHK (N.D. Cal.)....................14

*Kehoe v. Fidelity Fed. Bank & Trust*,
421 F.3d 1209 (11th Cir. 2005)....................15

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....................3

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
No. 1:02-cv-5893 (N.D. Ill.)....................16

*Medlock v. Taco Bell Corp.*,
2009 WL 1444343 (E.D. Cal. May 19, 2009)....................16

*Moehrl v. Nat'l Ass'n of Realtors*,
2020 WL 5260511 (N.D. Ill. May 30, 2020)....................17

*Patlan. v. BMW of N. Am., LLC*,
No. 2:18-cv-09546-CCC-SDA (D.N.J.)....................11

*Pinkowitz v. Elan Corp., PLC*,
2002 WL 1822118 (S.D.N.Y. July 29, 2002)....................3, 8

*Precision Roofing of N. Fla. Inc. v. Centerstate Bank*,
2022 WL 10538480 (M.D. Fla. Apr. 26, 2022)....................4

*Ramkissoon v. Lennar Corp.*,
No. 1:26-cv-25518....................1, 2, 5, 20

*Sharrard v. Lennar Corp.*,
No. 1:26-cv-25616....................1, 5, 20

*Smith v. State Farm Mut. Auto. Ins. Co.*,
301 F.R.D. 284 (N.D. Ill. 2014)....................18

*Smith v. Wm. Wrigley Jr. Co.*,
2010 WL 2401149 (S.D. Fla. June 15, 2010)....................8

*Stewart v. Lennar Corp.*,
No. 1:26-cv-25529....................1, 5, 20

*Tuteur v. Metropolitan Opera Ass'n, Inc.*,
No. 1:23-cv-03997-GS (S.D.N.Y.)....................13

*Webb v. CSX Transp., Inc.*,
No. 6:23-cv-00211-REW (E.D. Ky.)....................9

*Ya Mon Expeditions, LLC v. Int'l Yacht Broker's Ass'n., Inc.*,
No. 1:24-cv-20805-KMM (S.D. Fla. Apr. 1, 2024)....................4

*Ya Mon Expeditions, LLC v. Int'l Yacht Brokers Ass'n, Inc.*,
No. 1:24-cv-20805-MOORE (S.D. Fla.)....................15

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedures
Rule 23(g)....................1, 2, 20
Rule 23(g)(1)(A)....................6
Rule 23(g)(1)(B)....................6
Rule 42....................2
Rule 42(a) of the Federal Rules of Civil Procedure....................1, 2, 3, 5

Southern District of Florida Local Rules and Procedures
7.1(a)(3)....................20

**SECONDARY AUTHORITIES**

Manual for Complex Litigation (Fourth) (2004)
§10.21....................18
§10.22....................2, 17
§10.221....................6

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 9.35 (3d ed. 1992)....................16

Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* (2d ed. 2018)....................18, 19

Plaintiffs Robert Ramkissoon, Lauren Stewart, Lisa DiMeglio, Chad Sharrard, and Robert Gordon (collectively, "Plaintiffs") respectfully and jointly move: (a) under Rule 42(a) of the Federal Rules of Civil Procedure ("Rules") to consolidate the above-captioned related actions; and (b) under Rule 23(g) to appoint Jean Martin of Aylstock, Witkin, Kreis & Overholtz, PLC ("AWKO"), Brian C. Gudmundson of Zimmerman Reed LLP ("Zimmerman Reed"), and Israel David of Israel David LLC as Interim Co-Lead Class Counsel, and Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Interim Liaison Counsel in the consolidated action (collectively, "Proposed Interim Class Counsel"). In support, Plaintiffs state as follows:

## I. INTRODUCTION

There are currently five federal class action cases (the "Related Actions") against Lennar Corporation and/or Lennar Mortgage, LLC (collectively, "Defendants") pending in this District. The first-filed action, *Ramkissoon v. Lennar Corp.*, No. 1:26-cv-25518, was filed on August 14, 2026. The second-filed action, *Stewart v. Lennar Corp.*, No. 1:26-cv-25529, pending in front of Judge Rodolfo A. Ruiz, II, was also filed on August 14, 2026. The third-filed action, *DiMeglio v. Lennar Corp.*, No. 1:26-cv-25575, pending in front of Judge Jacqueline Becerra, was filed on August 17, 2026. The fourth-filed action, *Sharrard v. Lennar Corp.*, No. 1:26-cv-25616, pending in front of Judge Kathleen M. Williams, was filed on August 18, 2026. The fifth-filed action, *Gordon v. Lennar Corp.*, No. 9:26-cv-81016, pending in front of Judge Ed Artau, was also filed on August 18, 2026. All five Related Actions make nearly identical factual allegations against Defendants regarding an alleged March 2026 data breach at Lennar Corporation and Lennar Mortgage, LLC (collectively, "Lennar" or "Defendants"), and two of the five cases make further factual allegations against Defendants regarding an alleged May 2026 data breach (the "Data Breaches"). As such, all five cases bring overlapping claims, rely on the same legal theories, and

are against the same Defendants. Additionally, all five Related Actions seek class certification of similar and overlapping nationwide classes.

Because the disposition of Plaintiffs' claims will turn on the adjudication of the same issues and the same conduct, consolidation of the Related Actions under Rule 42 is warranted here. The Related Actions easily satisfy the prerequisites for consolidation as: (i) they involve common issues of fact or law; (ii) consolidation will result in a more efficient process for this Court, counsel, and the witnesses who will be called upon to testify at deposition and trial; and (iii) no prejudice will result.

Finally, following the filing of *Ramkissoon*, Plaintiffs' undersigned counsel discussed ways in which they can further promote litigation economy and efficiency and avoid undue delay by joining forces to prosecute the consolidated action, rather than filing competing applications for appointment of interim class counsel under Rule 23(g). Consistent with historical practice and the *Manual for Complex Litigation (Fourth)* §10.22 (2004) ("MCL"), the attorneys have reached an agreement, subject to the Court's approval, to jointly move under Rule 23(g) for the appointment of Jean Martin of AWKO, Brian C. Gudmundson of Zimmerman Reed, and Israel David of Israel David LLC as Interim Co-Lead Class Counsel in the consolidated action; and for the appointment of Stuart A. Davidson of Robbins Geller as Interim Liaison Counsel in the consolidated action.

## II. ARGUMENT

### A. Consolidation of the Related Actions Is Warranted

Rule 42(a) authorizes a court to consolidate separate actions if the actions involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). The Eleventh Circuit has encouraged district courts to consolidate cases, pursuant to Rule 42(a), in order "'to expedite the trial and eliminate unnecessary repetition and confusion.'" *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492,

1495 (11th Cir. 1985).[1] Once a court has made this determination, it has broad discretion to determine whether consolidation is appropriate. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (a court has the inherent authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").

In evaluating whether consolidation is appropriate, a court should consider:

> "[W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

*Hendrix*, 776 F.2d at 1495. While a court's "decision on whether to consolidate under Rule 42(a) is purely discretionary," courts should """make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion."""" *Bedwell v. Braztech Int'l, L.C.*, 2018 WL 830073, at *2 (S.D. Fla. Feb. 9, 2018) (quoting *Hendrix*, 776 F.2d at 1495); *see also Pinkowitz v. Elan Corp., PLC*, 2002 WL 1822118, at *3 (S.D.N.Y. July 29, 2002) (Rule 42(a) does not require that the actions be identical before they can be consolidated). Merging of the suits into a single cause is one form of consolidation and is appropriate where it will not result in prejudice to the parties.

### 1. The Actions Share Many Common Factual and Legal Issues

The only requirement set out in Rule 42(a) for consolidation is that the cases involve "a common question of law or fact." Fed. R. Civ. P. 42(a). This is plainly met here. Each case arises out of the Data Breaches, alleging that Plaintiffs' personally identifiable information ("PII") was

---

1 Unless otherwise noted, emphasis is added and citations are omitted.

accessed by third parties and that Plaintiffs and the class were harmed as a result. Therefore, all five cases center around the same conduct with nearly identical facts, and seek identical remedies.

Courts routinely consolidate cases when this occurs. *See*, *e.g.*, *G-Force Powersports Inc. v. DHL Express (USA), Inc.*, No. 0:26-cv-60956-LEIBOWITZ, ECF 15, Order Granting Plaintiffs' Joint Unopposed Motion to Consolidate Related Actions and Motion for Appointment of Interim Co-Lead Class Counsel at 2 (S.D. Fla. May 15, 2026) (consolidating two related class actions against one defendant seeking refunds of tariffs and tariff-related fees defendant charged consumers and businesses, following Supreme Court's determination that such tariffs were void *ab initio*); *In re Jan. 2021 Short Squeeze Trading Litig*., 2023 WL 6534411, at *2 (S.D. Fla. Sept. 21, 2023) (consolidating actions filed under federal securities laws arising from the same nucleus of facts); *Precision Roofing of N. Fla. Inc. v. Centerstate Bank*, 2022 WL 10538480, at *2 (M.D. Fla. Apr. 26, 2022) (consolidating related consumer protection class actions); *Ya Mon Expeditions, LLC v. Int'l Yacht Broker's Ass'n., Inc.*, No. 1:24-cv-20805-KMM, ECF 40, Order Consolidating Cases, (S.D. Fla. Apr. 1, 2024) (consolidating class actions against various boating brokerages and yacht broker associations, alleging violations of federal antitrust laws based on same operative facts).

### 2. Consolidation Will Further the Convenience of the Parties and Witnesses

In this case, consolidation is highly appropriate, as there are virtually no costs in consolidation, only substantial benefits. For example, Plaintiffs anticipate that they will seek to depose the same individuals from Defendants and will seek the production of the same documents. Without consolidation, there will be duplicative discovery demands and the possibility of inconsistent adjudication on a number of issues, including class certification. Consolidation will solve this problem by enabling a single judge with all the parties present to formulate a pretrial

plan that will minimize witness inconvenience and overall expense for all parties. Obviously, the savings in time and expense that will result from consolidation will benefit Plaintiffs as well as Defendants.

#### 3. Consolidation Will Not Prejudice Any Party

None of the parties in these cases will be prejudiced by consolidation. The complaints have all been recently filed, and none of the Related Actions has proceeded to a point where consolidation would create an undue delay. Moreover, if consolidation is ordered now, then it creates a path to consolidate and manage any subsequently filed cases, at the start.

If the cases are not consolidated, the courts in *Ramkissoon*, *Stewart*, *DiMeglio*, *Sharrard*, *Gordon*, and subsequently filed related cases, if any, would be required to make separate legal determinations regarding the Data Breaches, creating unnecessary work for all parties and the court system. *See, e.g.*, *Bedwell*, 2018 WL 830073, at *2 ("The Eleventh Circuit has encouraged trial judges to make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion.") (cleaned up); *Burrow v. Forjas Taurus S.A.*, 2018 WL 809439, at *2 (S.D. Fla. Feb. 9, 2018) (same).

The cases in this District, therefore, have identical fact patterns and common questions of law and fact. Plaintiffs submit that the courts would benefit from having a single judge oversee one consolidated case to avoid duplicative efforts and inconsistent rulings and to ensure an orderly disposition of these and any future-filed Related Actions. This is in keeping with Rule 42(a).

### B. The Appointment of Proposed Interim Class Counsel Is in the Best Interests of the Putative Class

Rule 23(g)(3) provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "The appointment of interim class counsel is recommended early, before class

certification to protect the interests of the putative class." *In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, 2020 WL 13561433, at *1 (S.D. Fla. Aug. 19, 2020). "The type of situation in which interim class counsel is appointed is one in which overlapping, duplicative, or competing class suits are pending before a court, so that appointment of interim counsel is necessary to protect the interests of class members." *Bedwell*, 2018 WL 830073, at *8 (cleaned up). "When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A)." *In re Univ. of Miami COVID-19 Tuition & Fee Refund*, 2020 WL 13561433, at *1. Under Rule 23(g)(1)(A), a court considers:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). A court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

"[B]oth lead and liaison counsel may be appointed." MCL §10.221 at 25. Lead counsel is "[c]harged with formulating . . . and presenting positions on substantive and procedural issues during the litigation." *Id.* Liaison counsel is charged with "communicat[ing] between the court and other counsel . . ., convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions." *Id.* at 24. "Liaison counsel will usually have offices in the same locality as the court." *Id.*

Proposed Co-Lead Counsel and Proposed Liaison Counsel meet all requirements for appointment as Interim Class Counsel under Rule 23(g)(3). They have successfully litigated many data breach class actions, including in this District, resulting in significant class recoveries. They

have the necessary resources to prosecute this litigation, have the strong support of Plaintiffs in the Related Actions, are working collectively, and will continue to work in this fashion to manage this litigation effectively and efficiently.

#### 1. Proposed Interim Class Counsel Performed Substantial Work Investigating the Related Actions

Courts may consider the work and resources counsel expend in investigating the claims asserted when appointing lead counsel. *See, e.g.*, *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 701 (S.D. Fla. 2004) (listing "the work counsel has done in identifying or investigating potential claims" as a factor in evaluating adequacy of counsel); *Adedipe v. U.S. Bank, Nat'l Ass'n*, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel in part because they "devoted the more substantial effort toward pre-suit investigation and identification of claims").

Here, Proposed Interim Class Counsel filed the first three of the Related Actions. Before filing their respective complaints, Proposed Interim Class Counsel interviewed prospective clients, investigated the facts surrounding the Data Breaches, and analyzed the merits of the class claims. Since filing, Proposed Interim Class Counsel have voluntarily self-organized and agreed on a plan to manage and consolidate the Related Actions. Moreover, Proposed Interim Class Counsel worked quickly to organize in order to avoid any delay that could result from a leadership dispute and will continue to address the merits of the case as expeditiously as possible.

Accordingly, the meaningful work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Rule 23(g)(3)—they are organized, unified, and committed to working together for the best interests of the class.

**2. Proposed Interim Class Counsel Have Relevant Experience and Knowledge**

A primary factor in selecting interim counsel is experience, skill, and knowledge and familiarity with the relevant law. *See, e.g.*, *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *5 (S.D. Fla. June 15, 2010) ("[P]roposed class counsel must demonstrate that he possesses both the experience and qualifications necessary to conduct this litigation."). Courts have found that proposed leadership's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g.*, *In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (N.D. Cal. July 27, 2015) (finding class action and complex litigation leadership experience relevant for appointment); *In re Meta Pixel Healthcare Litig.*, 2022 WL 18399978, at *2 (N.D. Cal. Dec. 21, 2022) (finding experience in similar cases weighed in favor of appointment).

Plaintiffs propose that the Court designate Ms. Martin and Messrs. Gudmundson and David as Interim Co-Lead Counsel, and Mr. Davidson as Liaison Counsel, each serving as Interim Class Counsel. These attorneys and their respective teams are extraordinarily well qualified and experienced to litigate this matter effectively on behalf of the class. They have many years of experience in litigating data breach class actions across the country. The attorneys' credentials and relevant experience are detailed in the biographies attached to this Motion as Exhibits A-D. A summary is below.

**a. Proposed Plaintiffs' Co-Lead Counsel**

**<u>Jean Martin—Aylstock, Witkin, Kreis & Overholtz, PLC</u>**

Jean Martin heads the consumer class action practice of Aylstock, Witkin, Kreis & Overholtz, PLC ("AWKO"), devoting her practice to data privacy, consumer protection, and defective products class actions. AWKO, based in Pensacola, Florida, is a national law firm which fights for the rights of consumers who are seriously injured as a result of defective products,

defective medical devices, deceptive practices, or other negligent behavior. With more than 35 licensed attorneys and over 300 staff members, AWKO has the resources, infrastructure, and experience to prosecute even the most complex national litigations.

Ms. Martin has led some of the country's biggest cybersecurity victories, including as a member of the Executive Committee in *In Re: AT&T Inc Customer Data Sec. Breach Litig.*, No. 3:24-cv-00757-D (N.D. Tex.) (securing a $177 million settlement for two classes of consumers involved in two separate data breaches), co-lead in *In re: Morgan Stanley Data Sec. Litig.*, No. 1:20-cv-05914-PAE (S.D.N.Y.) (total settlement of $68.2 million for 15 million class members), and co-lead *In re: Ambry Genetics Data Breach Litig*, No. 8:20-cv-00791-CJC (C.D. Cal.) (settlement valued in excess of $20 million for 230,000 patients).

Ms. Martin presently serves by appointment as co-lead class counsel in consolidated litigation arising from a chemical plant fire in Conyers, GA in *In re: Bio-Lab Class Actions*, No. 1:24-cv-04407-SEG (N.D. Ga.). She also serves by appointment as co-lead of a data breach MDL involving a central defendant and multiple of its software customers in *In Re: Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, No. 1:24-md-03096-RPK-LG (E.D.N.Y.), and also presently leads a class action against CSX for chemical exposures and property damage stemming from a train derailment in *Webb v. CSX Transp., Inc.*, No. 6:23-cv-00211-REW (E.D. Ky.).

In 2016, she was selected by her peers as the foremost Litigation attorney in the State of North Carolina for *Business North Carolina Magazine's Legal Elite*, gaining membership in the *Legal Elite* Hall of Fame. Last year she was named to Lawdragon 500 Leading Global Cyber Lawyers; this year she has been named to Lawdragon 500 Leading Complex Litigation Lawyers; and for the last two years has been named to Lawdragon 500 Leading Plaintiff Consumer Lawyers.

Ms. Martin sits on the Board of Visitors for Wake Forest School of Law, is a Board member for Public Justice, and is an Advisory Board member of Milestone Foundation.

**Brian C. Gudmundson—Zimmerman Reed LLP**

Brian Gudmundson is a partner with Zimmerman Reed LLP and has led and litigated numerous MDL and consolidated actions, including numerous nationwide data breach actions. He currently serves as court-appointed co-lead counsel representing patients in the largest ever healthcare data breach MDL, *In Re: Change Healthcare, Inc. Customer Data Sec. Breach Litig.*, No. 0:24-md-03108-DWF-DJF (D. Minn.), which involves over 190 million data breach victims. He also currently serves as the court-appointed co-chair of the Settlement Committee in the massive, nationwide data breach MDL, *In re: MOVEit Customer Data Sec. Breach Litig.*, No. 1:23-md-03083-ADB (D. Mass.), which involves over 100 defendants and millions of consumer victims. He recently served as co-lead counsel of the Fortra Defendant Track in *In re: Fortra File Transfer Software Data Sec. Breach Litig.*, No. 1:24-md-03090-RAR (S.D. Fla.), a multi-tiered data breach MDL involving millions of victims. In addition to data breaches involving consumer victims, he has co-led data breach actions on behalf of financial institution plaintiffs, including in *In re: Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-02807-JSG (N.D. Ohio) and *In re: Arby's Rest. Grp., Inc., Data Sec. Litig.*, No. 1:17-cv-00514-WMR (N.D. Ga.), both on behalf of financial institution victims. He also served on the steering committees on behalf of financial institutions in the settled actions, *In re: Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga.), *First Choice Fed. Credit Union v. The Wendy's Co.*, No. 2:16-cv-00506-NBF-MPK (W.D. Pa.), and *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*,No. 1:14-md-02583-TWT (N.D. Ga.), among several others. Prior to these, he was a lead litigator in the landmark Target data breach case, *In re Target Corp. Customer Data Sec. Breach*

*Litig.*, MDL No. 14-2522 PAM/JJK (D. Minn.) in which his partner, the late Charles S. ("Bucky") Zimmerman, was appointed lead counsel for the financial institution track. The *Target* and *Sonic* actions were two of the first data breach actions to ever obtain a certified liability class.

Outside the data privacy context, Mr. Gudmundson currently serves as co-lead counsel on behalf of consumers in the consolidated action *Patlan. v. BMW of N. Am., LLC*, No. 2:18-cv-09546-CCC-SDA (D.N.J.), alleging damages related to fire risk caused by defective BMW vehicles. He also served as co-lead plaintiffs' counsel on behalf of consumers in the settled MDL action *In re: CenturyLink Sales Practices and Sec. Litig.*, No. 0:17-md-02795-MJD-JFD (D. Minn.). He has also maintained an active practice in sports law, having represented thousands of retired NFL players in two major actions, *In re Nat'l Football Players' Concussion Injury Litig.*, No. 2:12-md-02323-AB (E.D. Pa.) (NFL Concussion Litigation) and *Dryer v. Nat'l Football League*, No. 0:09-cv-02182-PAM-AJB (D. Minn.) (NFL Publicity Rights Litigation), and retired NHL players in *In Re: Nat'l Hockey League Players' Concussion Injury Litig.*, No. 0:14-md-02551-SRN-JSM (D. Minn.).

Mr. Gudmundson is a frequent CLE presenter and takes considerable pride in litigating collegially and building cohesive teams capable of matching the resources and efforts of defendants to obtain excellent results for plaintiffs. [2] Upon presenting the plaintiffs' motion for final approval of the settlement in the *CenturyLink* MDL, the Hon. Michael J. Davis (D. Minn.) commented:

> Here, you know, I have a smile on my face because I'm towards the end of my career and it validates why I love the law, is that we do have outstanding lawyers that are pressing for justice and they're -- on both sides, because we need equal representation on both sides and we had that. The plaintiffs put together a team of

[2] Additional information about Mr. Gudmundson can be found in his firm resume attached hereto as **Exhibit B**.

> lawyers that could match the defense team, and the defense team put together a team that could -- had to deal with all the litigation that was going on across the country dealing with CenturyLink. And I can tell you that in all the hearings that I've had and all the briefings that I've had on this case there was nothing said by any of the parties that was out of line. It was all professional. And I think – I don't know what happened in the mediation or otherwise. I'm sure there was some more heated discussions, and that's necessary, but before me I did not have to get involved in slapping any hands or finding anyone in contempt or -- and I've done that before in these large litigations.

**Israel David—Israel David LLC**

Israel David LLC is a diverse and growing litigation boutique formed in 2022 by Israel David. Immediately prior to forming the firm, Mr. David spent 26 years in the Litigation Department of the elite international law firm Fried, Frank, Harris, Shriver & Jacobson LLP, including 17 years as a prominent partner at that firm. Mr. David has earned a national reputation for successfully leading and co-leading the representation of prominent defendants in some of the most high-profile securities and shareholder class action lawsuits nationwide in the last quarter-century. Among numerous other class action lawsuits, these include:

- Leading the representation of the President of Lehman Brothers in numerous lawsuits nationwide – including the consolidated class action securities litigation in the Southern District of New York – arising out of the collapse of Lehman Brothers, likely the largest corporate financial collapse in U.S. history.

- Co-leading the representation of Wells Fargo & Company, its predecessor Wachovia Corporation, and Wachovia's senior-most officers and directors in the consolidated class action securities litigation in the Southern District of New York arising out of the financial collapse of Wachovia. The lawsuit (with alleged losses of approximately $109 billion) is one of the largest class action securities fraud lawsuits in U.S. history to have obtained a complete dismissal.

- Co-leading the representation of all the underwriters of the General Motors Company 2010 IPO – the then-largest IPO in U.S. history – in a class action securities litigation in the Southern District of New York.

- Co-leading the representation of eight globally leading banks in a class action securities litigation in the Southern District of New York involving the issuance of approximately $26 billion of Residential Mortgage-Backed Securities.

More recently, federal courts from California to New York have appointed Mr. David to leadership positions in high-profile data privacy and antitrust class action lawsuits, including:

- In January 2023, the Honorable Judge Ann M. Donnelly of the Eastern District of New York appointed Israel David as Interim Co-Lead Class Counsel in the high-profile antitrust class action lawsuit challenging the so-called Northeast Alliance entered into by American Airlines and JetBlue Airlines. *In re Am. Airlines/JetBlue Antitrust Litig.*, No.1:22-cv-07374-AMD-TAM.

- In July 2023, the Honorable Judge Kandis A. Westmore of the Northern District of California appointed Israel David as Interim Co-Lead Class Counsel in a data privacy class action lawsuit involving a data breach that compromised the private data of over 200 million Twitter users. *Gerber v. Twitter, Inc.*, No. 4:23-cv-00186-KAW (N.D. Cal.).

- In July 2023, the Honorable Judge Katherine Polk Failla of the Southern District of New York appointed Israel David as Interim Lead Class Counsel in a data privacy class action lawsuit involving a data security incident at The Metropolitan Opera in New York City. *Tuteur v. Metropolitan Opera Ass'n, Inc.*, No. 1:23-cv-03997-GS.

- In March 2024, the Honorable Judge Rebecca R. Pallmeyer of the Northern District of Illinois appointed Israel David to the Plaintiffs' Steering Committee in a data privacy class action lawsuit arising out of allegations that TikTok illicitly spied on users of the TikTok app whilst using the app's in-app web browser. *In re TikTok Consumer Privacy Litig.*, No. MDL 2948-A.

- In June 2024, the Honorable Judge Rachel P. Kovner of the Eastern District of New York appointed Israel David as Liaison Counsel in a multidistrict class action lawsuit involving a data breach that compromised private health information of 13 million victims. *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, No. 1:24-md--03096-RPK-LGD.

Other Israel David LLC attorneys add a wealth of experience and diversity to the team, including a former partner at Ropes & Gray LLP, a former Counsel at Ropes & Gray LLP, a former Special Counsel at Weil, Gotshal & Manges LLP, a former Assistant District Attorney with the Manhattan District Attorney's Office, and a judicial clerk with the United States Court of Appeals for the Sixth Circuit, among other litigation attorneys.

**b. Proposed Plaintiffs' Liaison Counsel**

**Stuart A. Davidson—Robbins Geller Rudman & Dowd LLP**

With over 30 years' litigation experience, Mr. Davidson is the Co-Managing Partner of Robbins Geller's Boca Raton, Florida office, the largest class action firm in the world with over 200 lawyers in nine offices across the country, and co-leads the firm's Consumer Practice Group. He has been honored with numerous awards as a class action litigator, including as one of "Florida's Most Effective Lawyers" by the *Daily Business Review*, and a Leading Plaintiff Consumer Lawyer and a Leading Plaintiff Financial Lawyer by Lawdragon, received an award for Outstanding Antitrust Litigation Achievement in Private Practice at the American Antitrust Institute's Antitrust Enforcement Awards (for the EpiPen MDL case), and received the Distinguished Legal Writing Award from The Burton Awards Program and the Library of Congress in 2025. Mr. Davidson has served as class counsel in some of the largest and most complex data breach, privacy, consumer, and antitrust class actions in history, including:

- *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-03747-JD (N.D. Cal.) (Hon. James Donato) ($650 million cash, non-reversionary fund where Mr. Davidson served as class counsel, the largest ever privacy class action recovery in history);

- *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal.) (Hon. Lucy Koh) (working with Mr. Yanchunis as class counsel in the largest data breach case in history measured by number of impacted consumers (three billion), recovering a $117.5 million common fund for the class);

- *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 2:19-md-02904-MCA-MAH (D.N.J.) (Hon. Jamel Semper) (co-lead counsel in LabCorp track, securing $35 million recovery for victims of data breach of LabCorp's billing collection vendor);

- *In re Lakeview Loan Servicing Data Breach Litig.*, No. 1:22-cv-20955-GAYLES (S.D. Fla.) (Hon. Darrin P. Gayles) ($26 million recovery);

- *In re Independent Living Sys. Data Breach Litig.*, No. 1:23-cv-21060-WILLIAMS (S.D. Fla.) (Hon. Kathleen Williams) ($14 million recovery);

- *In re Solara Med. Supplies Data Breach Litig.*, No. 3:19-cv-02284-H-KSC (S.D. Cal.) (Hon. Marilyn Huff) (co-lead class counsel representing over 100,000 victims of medical information data breach, resulting in an all-cash common settlement fund of $5 million, approved without objection);

- *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, MDL No. 2785, 2:17-md-02785-DDC-TJJ (D. Kan.) ($609 million total recovery achieved weeks prior to trial in certified class action alleging antitrust claims involving the illegal reverse payment settlement to delay the generic EpiPen, which allowed the prices of the life-saving EpiPen to rise over 600% in 9 years); and

- *Kehoe v. Fidelity Fed. Bank & Tr.*, No. 9:03-80593-CV-DTKH (S.D. Fla.) (Hon. Daniel T.K. Hurley) (class counsel in one of the earliest privacy class actions in history where he represented Florida drivers against a national bank for violating the Driver's Privacy Protection Act, resulting in a seminal Eleventh Circuit privacy decision on damages, 421 F.3d 1209 (11th Cir. 2005), and a $50 million, all-cash recovery for the class).

Currently, Mr. Davidson serves as plaintiffs' co-lead or interim class counsel in several other major class action cases, including *In re Robinhood Prediction Market Litig*., No. 3:26-cv-03415-EMC (N.D. Cal.) (Co-Lead Counsel in cutting-edge class action alleging operation of illegal gambling prediction markets); *In re HVAC Equip. Antitrust Litig.*, No. 2:26-cv-10949-SKD-APP (E.D. Mich.) (Co-Lead Counsel for Direct Purchaser Plaintiffs; alleging six-year conspiracy to fix prices for HVAC equipment); *Ya Mon Expeditions, LLC v. Int'l Yacht Brokers Ass'n, Inc.,* No. 1:24-cv-20805-MOORE (S.D. Fla.) (Co-Lead Counsel, alleging conspiracy to fix prices for vessel brokerage commissions); and *Arrington v. Burger King Corp.*, No. 1:18-cv-24128-RUIZ (S.D. Fla.) (Plaintiffs' Steering Committee; alleging illegal "no-hire" agreements between Burger King and its franchisees).

In addition, Robbins Geller and its attorneys, often as sole lead counsel, have recovered over $45 billion for aggrieved class members, achieving numerous record-setting class recoveries, including:

- *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.) ($5.7 billion, largest ever antitrust settlement);

- *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 1:02-cv-5893 (N.D. Ill.) ($1.575 billion, largest ever post-verdict fraud settlement);

- *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.) (over $17 billion recovered, the largest ever consumer class settlement);

- *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Texas) (as sole lead counsel, recovered over $7 billion for a class of injured shareholders – the largest recovery ever obtained in any shareholder action in history);

- *In re Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-07658-MAS-LHG (D.N.J.) (as sole lead counsel, achieved $1.21 billion settlement, the largest-ever pharmaceutical securities fraud recovery); and

- *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio) (Plaintiffs' Executive Committee in sprawling MDL litigation concerning nationwide prescription opioid epidemic, recovering to date over $50 billion).

Finally, Robbins Geller is extremely well-capitalized and possesses the largest and most robust human, technological, investigatory, and financial resources in the field. Proof of Robbins Geller's resources and capabilities lies in its multi-decade track record of successfully prosecuting complex actions requiring tremendous financial resources. Robbins Geller consistently advances litigation costs in matters of comparable or even greater size and complexity. Robbins Geller is committed, without reservation or delay, to bring to bear its substantial resources to ensure a timely and successful result here.

### 3. Other Factors Support the Requested Appointment

***First***, the proposed leadership has the support of all Plaintiffs, and their proactive willingness and efforts to work cooperatively support the requested appointment. *See Medlock v. Taco Bell Corp.*, 2009 WL 1444343, at *6 (E.D. Cal. May 19, 2009) ("'The court should always encourage the parties to agree on lead counsel, while imposing its own choice only in extraordinary circumstances.'") (quoting Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 9.35 (3d ed. 1992)); *In re Aluminum Phosphide Antitrust Litig.*, 1994 WL 481847, at *5 (D. Kan. May

17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *see also In re Wendy's Co. S'holder Deriv. Action*, 2018 WL 6605394, at *2 (S.D. Ohio Dec. 17, 2018) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel."), *aff'd*, 44 F.4th 527 (6th Cir. 2022); *Moehrl v. Nat'l Ass'n of Realtors*, 2020 WL 5260511, at *2 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have consented to the proposed leadership structure."); MCL §10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"); *id.* §§ 10.22 at 24, 21.272 at 279 (describing "private ordering" approach). Indeed, as noted above, Proposed Interim Class Counsel moved quickly to consolidate and establish a leadership structure in order to avoid inefficiencies and any delay prosecuting this matter.

***Second***, Proposed Interim Class Counsel have the resources needed to litigate this action. Proposed Interim Class Counsel hail from some of the most respected plaintiffs' class action firms in the country. These firms possess substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information, as well as the skills and talents of their experienced attorneys and staff members located across the country, will allow them to streamline the litigation. Proposed Interim Class Counsel understand the time, energy, and skill necessary to lead this litigation, and have committed the resources required to ensure the effective and efficient representation of the proposed class.

As their résumés and experience indicate, Proposed Interim Class Counsel have the financial resources to see this litigation through to its conclusion, including trial.[3] They can and will pay assessments to a joint litigation fund, when necessary, to ensure that adequate funds are available to prosecute this litigation, and none of the firms intends to use any outside litigation funding for this case.

***Third***, Proposed Interim Class Counsel have the benefit of a highly diverse makeup. The proposed leads, their teams, and the attorneys at their respective law firms reflect the diversity of the bar—from the standpoint of age, gender, experience, and geographic location, among other attributes. *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* ("Duke *Guidelines*") at 38, 45-46 (2d ed. 2018) ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.").

***Fourth***, yet another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to successful management of the litigation. *See* MCL §10.21. One of the demanding aspects of complex litigation is "the difficult[y]

---

[3] Where the class faces well-financed adversaries represented by capable and well-funded counsel, counsel with similar resources should represent it. *See In re SSA Bonds Antitrust Litig.*, 2016 WL 7439365, at *3 (S.D.N.Y. Dec. 22, 2016) (the firms appointed, including Robbins Geller, had "substantially more resources at their disposal than the other applicant teams"). The Court must be satisfied that counsel "will commit sufficient attorney time and financial resources to vigorously prosecute the putative class's claims." *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 289 (N.D. Ill. 2014). The proposed team meets this standard.

of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id.* at 23. Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge together to form an alliance against often well-financed opponents, as is the case here. This process has the potential for disorganization, infighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke *Guidelines* at 43. Selecting lawyers who have previously worked together has many benefits—such lawyers have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id.*

Nowhere could these sentiments be truer than among the counsel proposed here. Proposed Interim Class Counsel's firms (and members of the teams) have already worked together on other major data breach class actions.

In other words, Proposed Interim Class Counsel are suited to jointly prosecute this case because they have a demonstrated track record of working cooperatively and inclusively. Of course, while they intend to zealously litigate the case, they are fully aware of the Court's expectation that class counsel prosecute the case efficiently and without duplication. Accordingly, they have and will continue to discuss how best to organize and use their diverse skills and unique experiences for the efficient prosecution and management of this litigation, while avoiding unnecessary and duplicative billing.

In sum, Proposed Interim Class Counsel have investigated the claims at issue, have extensive class action experience and knowledge of the applicable law, are willing to commit the

resources necessary to litigate this case on Plaintiffs' and the class's behalf, and can work as a team. As such, appointment is, respectfully, warranted in this case.

## III. LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to S.D. Fla. L.R. 7.1(a)(3), Plaintiffs advise that no Defendant has yet appeared in the Related Actions and are, therefore, unavailable to confer.

## IV. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court: (i) consolidate the *Ramkissoon*, *Stewart*, *DiMeglio*, *Sharrard*, and *Gordon* cases, and any later-filed related cases; (ii) order that Plaintiffs file a consolidated amended complaint within 45 days of the Court's ruling on this motion; (iii) grant Defendants 45 days to respond to the consolidated complaint; (iv) appoint as Interim Class Counsel under Rule 23(g) Jean Martin of AWKO, Brian C. Gudmundson of Zimmerman Reed, and Israel David of Israel David LLC as Plaintiffs' Co-Lead Counsel and Stuart A. Davidson as Plaintiffs' Liaison Counsel in the consolidated action; and (v) grant such other and further relief as the Court deems just and proper.

DATED: August 21, 2026

By *__/s/ Stuart A. Davidson__*

Stuart A. Davidson
Florida Bar No. 84824
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750-3000
sdavidson@rgrdlaw.com

*Proposed Plaintiffs' Liaison Counsel*

Jean Martin (*pro hac vice* motion forthcoming)
**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ PLC**
17 E. Main Street Suite 200
Pensacola, FL 32502

Telephone: (844) 794-7402
jmartin@awkolaw.com

Brian C. Gudmundson (*pro hac vice* motion forthcoming)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com

Israel David (*pro hac vice* motion granted)
**ISRAEL DAVID LLC**
60 Broad St., Suite 2900
New York, NY 10004
Telephone: (212) 350-8850
israel.david@davidllc.com

*Proposed Plaintiffs' Co-Lead Counsel*

Michael B. Homer (FL Bar No. 1065251)
**DYNAMIS LLP**
1 SE 3rd Ave., Suite 1000
Miami, FL 33131
Telephone: (561) 289-9016
mhomer@dynamisllp.com

Alex Phillips (*pro hac vice* motion forthcoming)
**STRAUSS BORRELLI PLLC**
One Magnificent Mile
980 N. Michigan Ave., Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
aphillips@straussborrelli.com

*Attorneys for Plaintiff Chad Sharrard and the Proposed Class*

Patrick A. Barthle, II, Florida Bar No. 99286
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505

Facsimile: (813) 222-4708
pbarthle@forthepeople.com

Daniel Srourian, Esq. (*pro hac vice* motion forthcoming)
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr. Suite 200
Beverly Hills, CA 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
daniel@slfla.com

*Attorneys for Plaintiff Robert Gordon and the Proposed Class*